IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL ACTION NO. |
| GARY FANNING, | 1:18-cr-362-AT-CMS |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Presently before the Court are three motions to suppress filed by Defendant Gary Fanning: a motion to suppress wiretap evidence [Doc. 29], a motion to suppress evidence and statements [Doc. 30], and a motion to suppress pole camera evidence [Doc. 33]. For the reasons that follow, I recommend that each of these motions be denied.

### I.   BACKGROUND

Defendant was arrested on August 15, 2018, during the execution of a federal search warrant at a house located at 5085 Campbellton Fairburn Road in Fairburn, Georgia (the "Residence"). According to the Criminal Complaint filed in the case, the Residence is associated with a multi-kilogram cocaine trafficking operation run by a man named Tommie Walker. [Doc. 1 ¶¶ 8–9]. The Criminal Complaint alleges that during the search of the Residence, agents found Defendant's driver's license

and approximately 300 grams of suspected heroin between the box spring and mattress of the bed in one of the bedrooms. [Id. ¶ 10]. Ammunition was also found in that bedroom on the floor in front of the television. [Id.]. A loaded AR-15-style rifle with a drum magazine loaded with 63 rounds of ammunition was found in the family room/den area. [Id. ¶ 11]. At the time of his arrest, Defendant allegedly made certain statements to the agents. Defendant was later charged in a four-count indictment with possession with the intent to distribute 100 grams or more of heroin, and three additional counts related to the gun and the ammunition. [Doc. 9].

Since the arrest, the Government apparently has provided Defendant with additional evidence that it may use against him, including: (1) transcripts from wiretaps from the Tommie Walker investigation; (2) evidence of statements Defendant made following his arrest; and (3) pole camera footage showing Defendant near a warehouse the Government believes was used in connection with the drug operation.

## II.  DISCUSSION

**A.  Motion to Suppress Wiretap Evidence [Doc. 29]**

In his motion to suppress evidence obtained via wiretaps, Defendant states that in connection with the Tommie Walker investigation, "a number of telephone calls and text messages were intercepted by the Government, including

communications with [Defendant] with various associates of Mr. Walker." [Doc. 29 at 1–2]. Defendant challenges the introduction of the wiretap evidence in a purely conclusory fashion, arguing that the "affidavit and application fail to meet the necessity requirement of 18 U.S.C. § 2592, et seq," implying that it was not necessary to obtain the wiretaps because "traditional investigative techniques" would have sufficed. [Id. at 2–3]. Defendant states that he has standing to contest the wiretap evidence "because he was overheard on government intercepted conversations and text messages" and because his "conversations with others were captured on recorded calls pursuant to the wiretap application." [Id. at 2]. In response, the Government states that Defendant was not intercepted on any wiretap, and therefore Defendant lacks standing to challenge the wiretap evidence. [Doc. 38 at 1–3].

To have standing to contest the admissibility of the information obtained from the Government's wiretaps, the challenging party must be an "aggrieved person" within the meaning of 18 U.S.C. § 2518(10)(a). An "aggrieved person" is defined by statute as "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." 18 U.S.C. § 2510(11). A defendant bears the burden of showing that he has standing to

challenge the intercepted information. See United States v. Flores, No. 1:05-cr-558, 2007 WL 2904109 (N.D. Ga. Sept. 27, 2007).

In the absence of any evidence either that Defendant was a participant in any communications intercepted during the course of the wiretaps or that the wiretap was directed against Defendant, I conclude that Defendant lacks standing to contest the validity of any of the wiretap evidence in this case. See 18 U.S.C. § 2518(10)(a). It is Defendant's burden to establish standing, and he has failed to do so. For that reason, this motion should be DENIED.[1]

### B.     Motion to Suppress Evidence and Statements [Doc. 30]

In his motion to suppress evidence and statements, Defendant seeks two separate forms of relief. First, he seeks to suppress all evidence seized during the search of the Residence on August 15, 2018, arguing that the agents lacked probable cause to search his room at the Residence. Second, Defendant argues that he is entitled to a Jackson v. Denno hearing to determine whether the statements he made

---

[1] In his reply brief, Defendant does not address the Government's statement that Defendant was not intercepted on the wiretaps; instead, he continues to claim that he has standing because "he was captured on government intercepted conversations and text messages." [Doc. 41 at 3]. If Defendant has evidence that he was, indeed, captured on a wiretap, he may present it to the district judge in connection with any objections that he may file to this Report and Recommendation.

following his arrest were voluntary. [Doc. 30 at 4–5]. I will address these issues in reverse order.

### 1. Motion to suppress statements (Jackson v. Denno)

With respect to Defendant's statements made at the time of his arrest, the Government agrees that Defendant is entitled to a Jackson-Denno hearing to evaluate whether the statement(s) he made to law enforcement were voluntary. [Doc. 36 at 6]. In the interest of efficiency, I recommend that Defendant's request for a Jackson v. Denno hearing be DEFERRED and resolved at the time of trial.

### 2. Motion to suppress evidence seized via the search warrant

The warrant in this case was based upon an affidavit provided by DEA Task Force Officer Brian Everett. [Doc. 44 at 10–34]. In that affidavit, Officer Everett stated that in August 2017, DEA agents in Atlanta initiated a spin-off investigation of a drug and money laundering organization operating in Atlanta, Georgia, with ties to ongoing DEA investigations in South Carolina and Colorado. [Id. ¶ 14]. Based on their collective investigation, the agents identified Tommie Walker as the leader of an Atlanta-based drug trafficking operation. [Id.].

According to the affidavit, the agents learned that Tommie Walker and others used the Residence for their cocaine trafficking purposes. [Doc. 44 ¶ 17]. Specifically, a cooperating defendant told law enforcement that he/she dropped off

drug proceeds at the Residence fifteen to twenty times in 2017 and picked up multi-kilogram quantities of cocaine at the Residence, often in Walker's presence. [Id. ¶ 19]. Officer Everett stated that through intercepted phone conversations, agents had learned that Walker was continuing to discuss drug deliveries with his source of supply in June 2018. [Id. ¶¶ 21–22]. Officer Everett stated that during drive-by surveillance on July 19 and 20, 2018, agents observed a white Chevrolet Suburban was at the Residence that had been seen multiple times that month at another location associated with Walker—a warehouse at 609 Cordell Drive where agents had observed tractor-trailers delivering cocaine. [Id. ¶¶ 16, 18–19, 23]. Finally, Officer Everett stated that geo-location data from Walker's cellphone showed that on August 1, Walker had been in close proximity to the Residence. [Id. ¶ 24]. The search warrant for the Residence describes with particularity the property to be searched, laying out a detailed description of the Residence, complete with an aerial map image and a surveillance photograph of the Residence. [Doc. 44 at 31–32]. It also describes with particularity the items to be seized. [Id. at 33–34].

In his motion, Defendant admits that he had been staying in one of the bedrooms of the Residence for "a few weeks" and that he was present in the room during the search. [Doc. 30 at 3–4]. He complains, however, that there was no probable cause to search his bedroom because there are no facts showing that he has

any relationship to Tommie Walker's drug activities and because Defendant was not specifically mentioned in the affidavit. [Id.]. The Government responds that the warrant was supported by probable cause, and the fact that the affidavit does not mention Defendant is irrelevant. [Doc. 36 at 4–5].

Probable cause exists when, under the totality of the circumstances, there is a "fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Noriega, 676 F.3d 1252, 1261 (11th Cir. 2012). "[P]robable cause deals 'with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Illinois v. Gates, 462 U.S. 213, 241 (1983). In considering probable cause, reviewing courts are expected to afford "great deference to judicial determination of probable cause to issue a search warrant." United States v. Robinson, 62 F.3d 1325, 1331 (11th Cir. 1995).

Here, Defendant's argument is without merit. He has presented no factual or legal basis for determining that one room of the Residence was off limits for the search; there are no facts showing that the bedroom that Defendant had been using was somehow distinct from the rest of the house. The Eleventh Circuit has made clear that "a search may be extensive as reasonably necessary as required to locate the items described in the warrant." United States v. Jackson, 120 F.3d 1226, 1228

(11th Cir. 1997). The facts stated in the affidavit were sufficient to show that there was a fair probability that evidence, fruits, or instrumentalities of drug trafficking or money laundering crimes would be found at the Residence, including in any of the bedrooms. This is all that the law requires. For these reasons, I recommend that this motion be DENIED.

**C.     Motion to Suppress Pole Camera Evidence [Doc. 33]**

Finally, Defendant argues that his Fourth Amendment rights were violated when he was captured on video taken by a pole camera installed by law enforcement at the warehouse located at 609 Cordell Drive (the "Warehouse").[2] Defendant argues that the pole camera evidence should be suppressed because the Government was required to obtain a warrant before obtaining the continuous wireless video feed from the camera, citing to the Supreme Court's recent decision in Carpenter v. United States, 138 S. Ct. 2206 (2018). In his motion, Defendant provides no evidence regarding where the pole camera was set up, merely stating in his brief that the Warehouse is located in a "public arena," was "secured and gated," and that the

---

[2] Defendant refers to the building as an "automotive garage," while the Government describes it as a "warehouse."

8

footage showed "the entrance, front open areas, and front door of the garage wherein [Defendant] frequented as a mechanic."[3] [Doc. 33 at 2; Doc. 42 at 2].

In Carpenter v. United States, the Supreme Court concluded that the acquisition of historical cell site records amounts to a search within the meaning of the Fourth Amendment and that, generally speaking, law enforcement must obtain a warrant supported by probable cause before acquiring such records. See 138 S. Ct. 2206, 2220–21 (2018).  The Supreme Court made clear, however, that its decision was intended to be a "narrow one" that should not "call into question conventional surveillance techniques and tools, such as security cameras." Id. at 2220.

Based on the limited facts before me, I conclude that Defendant's motion fails for two reasons.  First, the pole camera at issue in this case is akin to a security camera, which the Supreme Court expressly excluded from its holding in Carpenter. Second, Defendant has failed to establish that he had a legitimate expectation of privacy in the area captured on the video, which he admits was a public area.  Where a person's activities are subject to public exposure, no reasonable expectation of privacy arises.  See California v. Greenwood, 486 U.S. 35, 40–41 (1988) (finding

---

[3] The Government also has provided no evidence regarding the camera's whereabouts, simply describing it as being set up "along a public street" outside the Warehouse. [Doc. 39 at 1].

public accessibility of a garbage bag on public street defeats an individual's claim of Fourth Amendment protection); California v. Ciraolo, 476 U.S. 207, 213–14 (1986) (upholding the aerial observation of a fenced-in back yard visible from public airspace and noting "[t]he Fourth Amendment simply does not require the police traveling in the public airways at this altitude to obtain a warrant in order to observe what is visible to the naked eye"); accord Katz v. United States, 389 U.S. 347, 351 (1967) ("What a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection."). Defendant has presented no facts whatsoever to show that he took any steps to protect himself from public view or anything else that might show that he had any expectation of privacy (legitimate or otherwise) at the time and place that he was captured on the video. Accordingly, the motion to suppress the pole camera evidence should be DENIED.

### III.   CONCLUSION

For the reasons stated, I **RECOMMEND** that Defendant's motion to suppress wiretap evidence [Doc. 29], motion to suppress evidence obtained via a search warrant [Doc. 30], and motion to suppress pole camera evidence [Doc. 33] be **DENIED**. Defendant's motion for a Jackson v. Denno hearing [Doc. 30] is hereby **DEFERRED** to the district judge to be addressed at the time of trial.

I have now addressed all referred pretrial matters and have not been advised of any impediments to the scheduling of a trial. Accordingly, this case is **CERTIFIED READY FOR TRIAL**.

**SO REPORTED AND RECOMMENDED**, this 28th day of May, 2019.

_____
CATHERINE M. SALINAS
United States Magistrate Judge